**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0079-24

KIM KONDAK, on behalf of
herself and all others similarly
situated,

     Plaintiff-Appellant,

v.

EQUINOX HOLDINGS, INC.,

     Defendant-Respondent.

_____

Argued February 3, 2025 – Decided March 3, 2025

Before Judges Sabatino, Berdote Byrne, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0971-24.

Benjamin J. Wolf argued the cause for appellant (Jones, Wolf & Kapasi, LLC, attorneys; Joseph K. Jones and Benjamin J. Wolf, on the briefs).

Jared E. Blumetti argued the cause for respondent (LaRocca, Hornik, Greenberg, Kittredge, Carlin & McPartland, LLP, attorneys; Patrick McPartland and Jared E. Blumetti, on the brief).

PER CURIAM

Plaintiff Kim Kondak appeals from the trial court's order granting defendant Equinox Holdings, Inc.'s ("Equinox") motion to compel arbitration for all claims raised in her complaint, and to stay any related proceedings until the completion of arbitration. Plaintiff, who is a member of one of Equinox's health clubs in New Jersey, signed a membership agreement (the "Agreement") with Equinox that includes a provision to arbitrate disputes and a class action waiver. She filed a class action complaint in the Law Division alleging Equinox, through its Agreement, violated the Consumer Fraud Act ("CFA"), the Health Club Services Act ("HCSA"), the Retail Installment Sales Act ("RISA"), and the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA").

Plaintiff argues the trial court erred in holding her claims from injunctive relief pursuant to the CFA, HCSA, RISA, and TCCWNA were subject to arbitration because the parties' Agreement to arbitrate specifically excludes "public injunctive relief" claims. However, plaintiff has failed to plead a viable claim for any injunctive relief, regardless of whether it is public or private, and we affirm the trial court's ruling compelling arbitration.

A-0079-24

I.

We glean the following facts from the limited record before us. In September 2023, plaintiff signed the Agreement with Equinox, which became effective September 21, 2023, with an "initial" end date of September 21, 2024. Equinox is the owner and operator of two health club locations in New Jersey, and plaintiff's "home club" is the Summit location. We understand plaintiff is still a member of Equinox's Summit health club, and there is nothing in the record to suggest she has cancelled or ever attempted to cancel her membership.

Section seven of the Agreement includes an arbitration clause and class action waiver.[1] Pursuant to section 7.2 of the Agreement:

> You agree to submit any and all Disputes (as defined in Section 7.4) to binding arbitration pursuant to the Federal Arbitration Act, which will govern the interpretation and enforcement of this arbitration agreement ("**Arbitration Agreement**"). . . .
>
> **YOU AND EQUINOX AGREE THAT, EXCEPT AS PROVIDED IN SECTION 7.4, ANY AND ALL DISPUTES WHICH ARISE AFTER YOU ENTER INTO THIS AGREEMENT WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT BY A JUDGE OR JURY, IN ACCORDANCE WITH THIS ARBITRATION AGREEMENT.**

---

[1] The parties have not raised the viability of the class action waiver in this appeal. As a result, we do not address the issue.

3

The Agreement also defines the term "dispute" as used in section seven.

Section 7.4 states:

> Subject to the following exclusions, "**Dispute**" means any dispute, claim, or controversy between you and Equinox regarding any aspect of your relationship with Equinox, whether based in contract, statute, regulation, ordinance, tort (including without limitation fraud, misrepresentation, fraudulent inducement, negligence, gross negligence[,] or reckless behavior), or any other legal, statutory[,] or equitable theory, and includes without limitation the validity, enforceability[,] or scope of the Agreement (except for the scope, enforceability[,] and interpretation of the Arbitration Agreement and Class Action Waiver). However, "Dispute" *will not* include (1) personal injury claims or claims for lost, stolen, or damaged property; (2) claims that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void[,] or voidable; and (3) any claim for public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting alleged unlawful acts that threaten future injury to the general public. Such claims may be determined only by a court of competent jurisdiction and not by an arbitrator.
>
> [Emphasis in original.]

On March 14, 2024, plaintiff filed a class action complaint in the Law Division and demanded a jury trial alleging three counts against Equinox: (1) violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -229 and the Health Club Services Act, N.J.S.A. 56:8-39 to -48; (2) violations of the CFA based on the Retail Installment Sales Act, N.J.S.A. 17:16C-1 to -61; and (3) violations of

4

the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18. She sought an order certifying the matter as a class action; a declaratory judgment holding Equinox violated the HCSA, CFA, TCCWNA, and RISA; injunctive relief "enjoining [Equinox] from engaging in future violations of the HCSA, CFA, TCCWNA, and RISA"; equitable relief providing her with an accounting of all members of the proposed class; actual damages; maximum statutory damages pursuant to TCCWNA; treble damages pursuant to the CFA; attorneys' fees and costs; pre-judgment and/or post-judgment interest; and any other equitable and just relief. Plaintiff's complaint did not specify a dollar amount for the damages she was seeking from Equinox.

Equinox filed a motion to compel arbitration on an individual basis for all claims raised in the complaint and to stay all ancillary proceedings pending the completion of the parties' arbitration. On July 29, 2024, the trial court issued an order granting Equinox's motion to stay the proceedings and compel plaintiff to arbitrate the claims she raised in her complaint on an individual basis.

The trial court initially found, because the parties' arbitration agreement included a delegation clause "that state[d] that disputes over the scope of the agreement should be decided by an arbitrator," the "issue of whether plaintiff's claims are for public injunctive relief must be decided by an arbitrator rather

A-0079-24

than by this [c]ourt." Nevertheless, the trial court then proceeded to conduct a substantive analysis, finding even if plaintiff's claims for public injunctive relief were decided by the trial court, the matter would still be stayed pending arbitration because plaintiff was seeking private injunctive relief, not public injunctive relief. The trial court found the statutes plaintiff was relying upon for her claims for public injunctive relief did "not authorize [her] to act as a private attorney general and assert a 'public injunctive relief' claim on behalf of the general public." This appeal followed.

## II.

We review a trial court's order compelling arbitration de novo. Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020); Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). In reviewing orders compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also Flanzman, 244 N.J. at 133 ("[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002))).

A-0079-24

However, arbitration, when it is mutually agreed upon, as a favored means for dispute resolution is not "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001). Arbitration agreements are subject to customary contract law principles. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014). The terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-44. "Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Id. at 441.

As an initial matter, we disagree with the trial court that the issue of whether New Jersey recognizes a claim for "public injunctive relief" is an issue to be decided by the arbitrator pursuant to the Agreement's delegation clause. Our Supreme Court has concluded, "[The United States] Supreme Court holdings treat an arbitration agreement as severable and enforceable, notwithstanding a plaintiff's general claims about the invalidity of the contract as a whole. The same approach pertains to issues of arbitrability." Goffe, 238 N.J. at 195 (internal citations omitted). "[T]o be decided by a court, an arbitrability challenge—a challenge as to whether a particular matter is subject to arbitration or can be decided by a court—must be directed at the delegation clause itself (which itself constitutes an arbitration agreement subject to

7

enforcement)." Ibid. "[A] general challenge to the validity of the agreement as a whole will not suffice to permit arbitration to be avoided."

The term "public injunctive relief" was first used by the California Legislature. Subsequently, courts interpreting California statutes have "deemed contractual provisions waiving the right to seek public injunctive relief 'invalid and unenforceable.'" Keebaugh v. Warner Bros. Ent. Inc., 100 F.4th 1005, 1023 (9th Cir. 2024) (quoting McGill v. Citibank, N.A., 393 P.3d 85, 93 (Cal. 2017)). Public injunctive relief is a statutory creation and a remedy available to litigants pursuant to specific California statutes. See McGill, 393 P.3d at 90 ("To summarize, public injunctive relief under the [unfair competition law ("UCL")], the [Consumers Legal Remedies Act ("CLRA")], and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public." (quoting Broughton v. Cigna Healthplans of Cal., 988 P.2d 67, 74 (Cal. 1999))).

The Ninth Circuit Court of Appeals has interpreted "public injunctive relief within the meaning of McGill [as] limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons." Hodges v. Comcast Cable Commc'ns, LLC, 21 F.4th 535, 542 (9th Cir. 2021) (citation reformatted).

8

"Such an injunction attempts to stop future violations of law that are aimed at the general public, and imposing or administering such an injunction does not require effectively fashioning individualized relief for non-parties." Ibid. It has been almost exclusively used to address false advertising to the general public.

The parties' Agreement specifically excludes "any claim for public injunctive relief" from the definition of "disputes" subject to arbitration. The subject Agreement defines the term "public injunctive relief" consistent with California statutes and caselaw, stating it is "injunctive relief that has the primary purpose and effect of prohibiting alleged unlawful acts that threaten future injury to the general public." At oral argument, we were informed Equinox included the term "public injunctive relief" in the exclusion from the arbitration clause of the Agreement because Equinox has health club facilities in California, and it utilizes an omnibus membership.

The parties before us dispute whether plaintiff's claims are for public injunctive relief or injunctive relief limited to the putative class. Plaintiff argues her claims are for public injunctive relief because she included "injunctive relief, enjoining [Equinox] from engaging in future violations of the HCSA, CFA, TCCWNA, and RISA" as a form of relief in her complaint, while Equinox argues any injunctive sought by plaintiff is limited to the class. We are aware of no

9

New Jersey case, nor has one been presented to us, which utilizes the term "public injunctive relief" or distinguishes between public injunctive relief and injunctive relief. Regardless, we need not address the issue of whether New Jersey recognizes claims for "public injunctive relief" because we conclude plaintiff has failed to plead a viable claim for any injunctive relief, whether public or limited to the putative class, pursuant to any of the enumerated statutes.

As noted, plaintiff alleges Equinox's membership Agreement violates four statutes: the HCSA, the RISA, the CFA, and the TCCWNA. The HCSA applies to the service contracts of health club facilities and is found within the CFA. See N.J.S.A. 56:8-39 to -48. "[A]ny violation of the provisions of [the HCSA] shall be subject to the sanctions contained in the [CFA]." N.J.A.C. 13:45A-25.7. The HCSA does not provide for additional injunctive relief independent of the CFA.

The RISA applies to service contracts, including health club service contracts. See Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 264, 269-70 (2020). This statute does not afford injunctive relief as a remedy. See N.J.S.A. 17:16C-1 to -61.

The CFA provides for injunctive relief. N.J.S.A. 56:8-19. New Jersey requires a plaintiff to plead and establish ascertainable loss in order to seek

injunctive relief. "[T]o state a CFA claim, private plaintiffs—in contrast to the Attorney General—must show that they suffered an 'ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any . . . practice declared unlawful'" pursuant to the CFA. Robey v. SPARC Grp. LLC, 256 N.J. 541, 548 (2024) (omission in original) (quoting N.J.S.A. 56:8-19; and Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473 (1988)). "[A]lthough . . . the CFA relaxes traditional standards for injunctive relief, [plaintiffs'] ability to act as 'private attorneys general,' is reliant on their ability to plead an ascertainable loss." Id. at 566-67 (internal citations omitted) (first quoting Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 268 (1997); and then citing Weinberg v. Sprint Corp., 173 N.J. 233, 250 (2002)). See Weinberg, 173 N.J. at 250 ("The express language of the statute requires private part[ies] to have a claim that [they have] suffered an ascertainable loss of money or property [to] bring a cause of action under the Act. . . . [T]he Act permits only the Attorney General to bring actions for purely injunctive relief.").

Plaintiff is not entitled to injunctive relief because she has failed to plead any loss, and therefore, failed to state a claim pursuant to the CFA. See Robey, 256 N.J. at 548. "A plaintiff can establish an ascertainable loss by demonstrating

A-0079-24

either an out-of-pocket loss or a deprivation of the benefit of one's bargain." Ibid. "'Out-of-pocket damages represent the difference between the price paid and the actual value received,' while 'benefit-of-the-bargain principles allow "recovery for the difference between the price paid and the value of the property had the representations been true."'" Ibid. (quoting Finderne Mgmt. Co. v. Barrett, 402 N.J. Super. 546, 574 (App. Div. 2008) (quoting Correa v. Maggiore, 196 N.J. Super. 273, 284 (App. Div. 1984))).

In her complaint and briefs submitted to this court, plaintiff has failed to demonstrate any "out-of-pocket loss" or "deprivation of the benefit of her bargain" with Equinox. Count one of plaintiff's complaint alleges Equinox's violations of the HCSA and CFA, including "engag[ing] in unconscionable commercial practices and fraudulent activity[;] ma[king] false promises and misrepresentations[;] . . . knowingly omitt[ing] facts"; failing to include the sales tax within the "Total Annual Payment" of the Agreement; forcing members "to automatically and perpetually renew their contracts" in contravention of the HCSA; "imposing unreasonable and unduly onerous requirements to cancel [the] health club memberships"; as well as additional violations, all resulted in plaintiff and the putative members of the class suffering an ascertainable loss in the amount of payments made to Equinox.

A-0079-24

In the second count of her complaint, where she alleges "[v]iolations of the CFA based on [the] RISA," plaintiff likewise amorphously claims Equinox's violations of the RISA and its failure to comply with that statute resulted in her and all putative members of the class suffering "an ascertainable loss in the amount of payments made to Defendant."

In both counts one and two of her complaint, and in her briefing submitted to this court, plaintiff fails to demonstrate what additional "amount of payments" that she made to Equinox constituted an ascertainable loss. To avail herself of the facilities, plaintiff paid a monthly membership fee, explicitly set forth in the Agreement, including the monthly amount of state taxes owed. She failed to plead how the payment of her monthly membership in exchange for her benefit of the bargain—access to the health club facilities—constitutes an ascertainable loss pursuant to the CFA. She also does not allege she ever cancelled her membership or attempted to cancel her membership and suffered any losses as a result of doing so.

At oral argument, plaintiff's counsel argued her ascertainable loss was established because the sales tax and "hidden fees" were not included in the designated total annual payment in the Agreement. This argument is belied by the record. The Agreement states: "[w]ith respect to electronic funds transfers

13

A-0079-24

for payment of my Monthly Membership Dues, I acknowledge and agree that Monthly Membership Dues will be $203[] plus $13.45 sales tax. . . ."  Plaintiff also fails to identify any "hidden fees" in her complaint.

Further, plaintiff fails to demonstrate "[a]n 'estimate of damages, calculated within a reasonable degree of certainty' [which would] suffice to demonstrate an ascertainable loss."  Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 249 (2004) (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 22 (1994)).  Plaintiff's complaint does not provide an "estimate of damages" or establish an "ascertainable loss" that she or the putative class members allegedly suffered.  Ibid.

Like the CFA, the TCCWNA provides for injunctive relief as a remedy.  Although not specifically mentioned, it states:  "[t]he rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State."  N.J.S.A. 56:12-18.  We have previously concluded courts may consider injunctive relief as a valid remedy pursuant to the TCCWNA.  See, e.g., Cameron v. S. Jersey Pubs, Inc., 460 N.J. Super. 156, 195-96 (App. Div. 2019) ("If a court were to find . . . a violation of the TCCWNA because a required provision to a consumer contract

14

was not included, we cannot envision any circumstances where declaratory and injunctive relief would not be valid remedies to consider, if necessary, to secure future compliance with the law.").

However, plaintiff is not entitled to injunctive relief pursuant to the TCCWNA because she failed to establish the necessary elements of a TCCWNA claim. To state a claim pursuant to the TCCWNA, plaintiff must demonstrate: (1) defendant is a seller, lessor, creditor, lender, bailee, or assignee; (2) "who, in writing, entered into a consumer contract or gave or displayed a consumer warranty, notice, or sign[,] (3) containing a provision that violates a consumer's 'clearly established legal right'"; and (4) plaintiff is an aggrieved consumer. Robey, 256 N.J. at 564 (quoting Pisack v. B&C Towing, Inc., 240 N.J. 360, 379 (2020) (quoting Spade v. Select Comfort Corp., 232 N.J. 504, 516 (2018))); see also N.J.S.A. 56:12-15.

In her complaint, she alleges "[p]laintiffs and all those similarly situated have been aggrieved/harmed by [d]efendants['] violations of TCCWNA because they have been charged and paid unlawful fees." She premises her TCCWNA claim on alleged violations of the HCSA, CFA, and RISA. Her complaint states: "The [m]embership [a]greements used by [d]efendants to enroll [p]laintiffs and all others similarly situated violate [the] TCCWNA because they contain

15

provisions that violate the HCSA[,] the CFA, and [the] RISA, directly in the manner set forth in greater detail above."

Even if we generously read plaintiff's complaint as having established the first three elements of her TCCWNA claim because: (1) Equinox is a seller of health club services; (2) who entered into the Agreement, a consumer contract, with plaintiff; and (3) the contract contains provisions that allegedly violate her clearly established legal rights pursuant to the HCSA, RISA, and CFA, plaintiff fails to demonstrate the required fourth element of her TCCWNA claim—that she or the putative class is an aggrieved consumer.

Our Supreme Court has defined an "aggrieved consumer" pursuant to the TCCWNA as "a consumer who has suffered some form of harm as a result of the defendant's conduct." Spade, 232 N.J. at 522. The TCCWNA requires "a consumer to show that he or she has suffered harm, even if that harm does not warrant an award of damages, as a result of a violation of N.J.S.A. 56:12-15." Id. at 524. Although "[t]he harm is not 'limited to injury compensable by monetary damages,'" Cameron, 460 N.J. Super. at 193-94 (quoting Spade, 232 N.J. at 523), "[i]n the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is

A-0079-24

not an aggrieved consumer for purposes of the TCCWNA," id. at 194 (quoting Spade, 232 N.J. at 524) (internal quotation marks omitted).

Moreover, our Supreme Court in Robey recently clarified the term "aggrieved consumer" as used in the TCCWNA is harmonious with the concept of "ascertainable loss" pursuant to the CFA. Id. at 549. Without an ascertainable loss pursuant to the CFA, alleged violations of the CFA cannot form the basis of a violation of a "clearly established legal right" pursuant to the TCCWNA. Id. at 564-65. If a plaintiff's alleged harm pursuant to the TCCWNA is premised on the same allegations as a CFA claim, the court must find the plaintiff incurred an ascertainable loss of money or property pursuant to the CFA to allow the TCCWNA claim to proceed. Ibid.

Plaintiff fails to plead any harm or adverse consequences she has suffered due to Equinox's alleged violations of the HCSA, RISA, and CFA. In her complaint, she claims she and her purported class members "have been aggrieved/harmed . . . because they have been charged and paid unlawful fees." Charging New Jersey state tax, the only "fee" specifically mentioned, is not unlawful. Plaintiff has not demonstrated what unlawful fees she was charged and forced to pay, and therefore, has failed to establish that she is an "aggrieved consumer." N.J.S.A. 56:12-17.

A-0079-24

Because plaintiff's claims for injunctive relief fail to plead she suffered an ascertainable loss or she is an aggrieved consumer, she has not pleaded a claim for injunctive relief and we affirm the trial court's order compelling arbitration of her individual claims and staying any ancillary proceedings until arbitration is completed. To the extent we have not addressed any of plaintiff's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

18